<u>NOT FOR PUBLICATION</u>                                                                                          **CLOSED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TOWNSHIP OF LYNDHURST, NEW )
JERSEY, on behalf of itself and all )
similarly situated taxing authorities within )
the state of New Jersey, )
)
      Plaintiff, )      Civil Action No.: 08-3033 (JLL)
)
v. )
)      **OPINION**
PRICELINE.COM, INC., et al., )
)
      Defendants. )

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants' motion to dismiss the Township of Lyndhurst's ("Lyndhurst") class action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction or, alternatively, pursuant to 12(b)(6) for failure to state a claim. Lyndhurst, on behalf of itself and the Class, asserts five causes of action in the Compliant: (1) a violation of § 28-1, et seq., of the Revised General Ordinances of the Township of Lyndhurst ("Lyndhurst Ordinances") adopted pursuant to New Jersey Statutes § 40:48F-1, et seq. (the "Enabling Act"); (2) unjust enrichment; (3) conversion; (4) imposition of a constructive trust; and (5) declaratory judgment. The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion is granted.

I.  **BACKGROUND**

Lyndhurst is a political subdivision of the State of New Jersey. Pursuant to state statute, New Jersey municipalities are authorized to impose a tax on hotel occupancy. The scope of the authorization depends on the class of the city. For example, New Jersey Statute § 40:48E-3 provides that

> [t]he governing body of any city of the first class or the governing body of any city of the second class in which there is located a terminal of an international airport may make, amend, repeal and enforce an ordinance imposing in the city a tax, not to exceed 6%, on charges for the use or occupation of rooms in hotels which tax shall be in addition to any other tax imposed by law.

Section 40:48F-1 provides that

> [t]he governing body of a municipality, other than a city of the first class or a city of the second class in which the tax authorized under P.L. 1981, c. 77 (C. 40:48E-1 et seq.) is imposed, a city of the fourth class in which the tax authorized under P.L. 1947, c. 71 (C. 40:48-8.15 et seq.) is imposed, or a municipality in which the tax and assessment authorized under section 4 of P.L. 1992, c. 165 (C. 40:54D-4) is imposed, may adopt an ordinance imposing a tax, at a uniform percentage rate not to exceed 1% on charges of rent for every occupancy on or after July 1, 2003 but before July 1, 2004, and not to exceed 3% on charges of rent for every occupancy on or after July 1, 2004, of a room or rooms in a hotel subject to taxation pursuant to subsection (d) of section 3 of P.L. 1966, c. 30 (C. 54:32B-3).

Pursuant to § 40:48F-1, Lyndhurst adopted an ordinance imposing a hotel tax. Section 28-2 of the Lyndhurst Ordinances provides:

> There is hereby established a hotel and motel room occupancy tax in the Township of Lyndhurst which shall be fixed at a uniform percentage rate of one percent on charges of rent for every occupancy of a hotel or motel room in the Township of Lyndhurst on or after July 1, 2003, but before July 1, 2004, and three percent on charges of rent for every occupancy of a hotel or motel room in the Township of Lyndhurst on or after July 1, 2004, of a room or rooms in a hotel subject to taxation pursuant to subsection (d) of section 3 of P.L. 1966, c. 40, N.J.S.A. 54:32B-3 (sales tax).

Lyndhurst asserts that Defendants are "internet travel compan[ies]" who "acquire

inventories of hotel rooms at negotiated rates from . . . hotels" and "then rent the hotel rooms to consumers at higher rates." (Compl. ¶ 27.) In addition to collecting "rent" for the room from their customers, Defendants also collect a separate amount for hotel taxes. (Id.) The tax collected by Defendants is calculated based on the negotiated room rate with the hotel, not the higher amount charged by Defendants. (Id.) Defendants pay the hotel the negotiated room rate plus the tax collected from the customer. (Id.) The hotel in turn files tax returns with and remits the hotel tax to the taxing authority. (Id. at ¶¶ 27, 36.) Defendants have not filed returns remitting any hotel tax returns with the taxing authority. (Id. at ¶ 36.)

## II.    LEGAL STANDARDS

Motions made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenging a party's standing to bring suit may "attack the complaint on its face . . . [or] attack subject matter jurisdiction as a matter of fact." Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006). "When considering a facial attack, 'the Court must consider the allegations of the complaint as true,' and in that respect such a Rule 12(b)(1) motion is similar to a Rule 12(b)(6) motion." Id. (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). On the other hand, where the challenging party presents a factual challenge, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (quoting Mortensen, 549 F.2d at 891)).

Defendants argue that Lyndhurst presents a factual challenge and so argue that this Court is free to weigh evidence outside of the Complaint. Lyndhurst, on the other hand, argues that Defendants' challenge is a facial attack requiring the court to accept all factual allegations in the Complaint as true. This Court agrees with Lyndhurst; the standing arguments are based strictly on

statutory construction, not on underlying disputed questions of fact potentially affecting this Court's jurisdiction. Therefore, this Court treats the motion as a facial jurisdictional challenge.

### III. DISCUSSION

Lyndhurst argues that Defendants are liable for the hotel tax on the higher rate they charge their customers, not the lower rate at which they purchase the room from the hotel. It further asserts that Defendants are required to remit the hotel taxes to the taxing authority, and that their failure to do so amounts to tax evasion. (See Compl. ¶ 3.) Defendants assert, first, that Lyndhurst does not have standing–it is not "the property party to bring any action involving the collection or administration of the Hotel Tax"–and, second, that "the Director [of the Division of Taxation for the State of New Jersey (the "Director of Taxation")], who has *exclusive* jurisdiction over the administration of the Hotel Tax, has already determined that Defendants are not subject to Lyndhurst's Ordinance." (Defs.'s Mem. of Law in Supp. of Mot. to Dismiss at 2 (emphasis in original) [hereinafter "Defs.'s Mem."].) Defendants additionally argue that even if Lyndhurst was a property party to bring suit, the Complaint should be dismissed because it has failed to exhaust required administrative remedies and because its claims fail to state a right to relief because "Defendants are not 'operators' of hotels" who must collect and remit the hotel tax to the taxing authority. (Defs.'s Mem. at 3.)

Because Defendants challenge the standing of Lyndhurst to bring this suit, the Court must first determine if it has the power to hear the matter. "The doctrine of standing is comprised of both constitutional and prudential components." Mariana v. Fisher, 338 F.3d 189, 204 (3d Cir. 2003) (internal quotations omitted). Constitutional standing requires that a plaintiff establish three elements: (1) "the plaintiff must have suffered an injury in fact–an invasion of a legally

protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). On the other hand, "[t]he prudential components of standing address the need for judicial restraint, thereby constituting a supplemental aspect of the basic standing analysis." Mariana, 338 F.3d at 204 (internal quotations omitted). In the Third Circuit, there is "a three-part test for assessing whether a party satisfies prudential standing:" (1) a plaintiff must "assert his or her own legal interests rather than those of a third party;" (2) "courts [should] refrain from adjudicating abstract questions of wide public significance amounting to generalized grievances;" and (3) "a plaintiff must demonstrate that his or her interests are arguably within the 'zone of interests' that are intended to be protected by the statute, rule, or constitutional provision on which the claim is based." Id. at 204-05.

      Although Lyndhurst focuses on the existence of an injury in fact in its brief, Defendants do not appear to challenge whether Lyndhurst has met the constitutional minimum required for standing. Rather, Defendants argue that pursuant to state statutory provisions Lyndhurst is not the proper party to bring the suit–that it is not asserting its own legal interests. They argue that "a municipality 'is a creature of the state and thus necessarily subordinate to its creator and can exercise only such powers as may be granted to it by the Legislature'" (Defs.'s Mem. at 7 (quoting In re Grant Charter Sch. Application of Englewood on Palisades Charter Sch., 727 A.2d 15, 45 (N.J. Super. Ct. App. Div. 1999)), and that by statute, "[t]he right to collect the Hotel Tax . . . belongs exclusively to the Director and not Lyndhurst" (id.).

Section 40:48F-5 of the Enabling Act, subsection (a), provides that

[t]he Director of the Division of Taxation shall collect and administer any tax imposed pursuant to the provisions of section 3 of P.L. 2003, c. 114 (C. 40:48F-1). In carrying out the provisions of this section, the director shall have all the powers granted in P.L. 1966, c. 30 (C. 54:32B-1 et seq. [the Sales and Use Tax Act ]).

Section 54:32B-19 ("Determination of tax") provides that

[i]f a return required by this act is not filed, or if a return when filed is incorrect or insufficient, the amount of tax due shall be determined by the director from such information as may be available. . . . Subject to the provisions of the State Tax Uniform Procedure Law, R.S. 54:48-1 et seq., such determination shall finally and irrevocably fix the tax unless the person against whom it is assessed, within 90 days after giving of notice of such determination, shall apply to the director for a hearing, or unless the director of his own motion shall redetermine the same. After such hearing the director shall give notice of his determination to the person against whom the tax is assessed.

Section 54:32B-22 ("Proceedings to recover tax") provides in subsection (a) that

[w]henever any person required to collect tax shall fail to collect or pay over any tax, penalty or interest imposed by this act as therein provided, or whenever any customer shall fail to pay any such tax, penalty or interest, the Attorney General shall, upon the request of the director, bring or cause to be brought an action to enforce the payment of the same on behalf of the State of New Jersey in any court of the State of New Jersey or of any other State or of the United States.

Section 54:32B-23 ("Actions for collection of tax") provides in subsection (a) that "[a]t the request of the Division of Taxation, the Attorney General may bring suit, in the name of this State, in the appropriate court of any other State to collect any tax legally due this State under this act." Thus, Defendants argue that, pursuant to the Enabling Act, the proper party to determine the amount of tax and bring a suit for the collection of taxes owed is the Attorney General on behalf of the Director of Taxation.

Lyndhurst argues that it does have standing. In support of its position it makes two types of arguments: first, that based on general doctrines of municipal power, it has the power to

enforce its own ordinances, and second, that the applicable state statutes, when read together, provide that, while the Director of Taxation may have the power to collect and sue under the Enabling Act, that power is not exclusive. With regard to general doctrines of municipal power, Lyndhurst argues that "[i]t is axiomatic that a municipality can collect its own taxes." (Pltf.'s Br. in Opp'n to Mot. to Dismiss at 6, 9-10 [hereinafter "Opp'n Br."].) It further argues that "the power to tax carries with it the implied power to sue to collect the taxes." (Id. at 7 (citing Bd. of Taxation of Essex County v. Town of Belleville, 223 A.2d 359 (N.J. Super. Ct. Law Div. 1966).)

"As a general principle, it is established beyond question that municipalities, being created by the State, have no powers save those delegated to them by the Legislature and the State Constitution." Dome Realty, Inc. v. Paterson, 416 A.2d 334, 341 (N.J. 1980). Thus, the question is simply what power the Legislature has granted Lyndhurst with respect to the hotel tax. In reviewing statutory grants of power "Art. IV, § VII, par. 11 of [the New Jersey] Constitution directs that grants of power to municipalities be liberally construed in favor of the local governments." State v. Crawley, 447 A.2d 565, 569 (N.J. 1982). But, the New Jersey Supreme Court has also held that this broad proposition is limited by two principles: (1) that "the grant of legislative powers to municipalities relates to matters of local concern which may be determined to be necessary and proper for the good and welfare of local inhabitants, and not to those matters involving state policy or in the realm of affairs of general public interest and applicability," and (2) that "municipalities may not enact ordinances on matters otherwise competent for local legislation if the State has preempted the field." Id.; see also Dome Realty, Inc. v. Paterson, 375 A.2d 1240, 1243 (N.J. Super. Ct. App. Div. 1977) (holding that "[w]hen a municipality enters the field of enforcement of tax collections its power is limited by the state legislation on the subject"

and where the Legislature has "adopted a series of statutes which spell out in comprehensive fashion the powers and rights of municipalities," those statutes "set forth the exclusive means available to a municipality to enforce tax liabilities").

In <u>Board of Taxation of Essex County</u>, relied on by Lyndhurst, the court held that a county board had implied enforcement powers to collect for delinquent taxes. 223 A.2d at 360. However, in that case, the Legislature, by statute, had "created county boards of taxation to aid in the collection and distribution of taxes." <u>Id.</u> The court held the power of enforcement existed due to the "broad grant of power [wherein] the Legislature has delegated to these boards of taxation authority . . . [the power to] do everything necessary for the taxation of all property in the county . . . ." <u>Id.</u> (quoting N.J. Stat. Ann. § 54:4-47). Section § 54:4-47 ("Revision and equalization; functions of county board") provides that

> [t]he county board may adjourn from time to time in the discharge of its duties, and may, after investigation, revise, correct and equalize the assessed value of all property in the respective taxing districts, increase or decrease the assessed value of any property not valued at its taxable value, assess property omitted from any assessment, as provided by law, at its taxable value, and in general do everything necessary for the taxation of all property in the county at its taxable value.

Rather than support a broad proposition that every authorization to tax "carries with it the implied power to sue to collect the taxes," this case simply reaffirms the general principle that the powers of New Jersey municipalities are limited by state statute, but that where powers are granted, the statutes will be construed liberally in their favor.

Turning to the specific statutory authorization under the Enabling Act, Lyndhurst begins by arguing that § 40:48F-5, providing that the Director of Taxation "shall collect and administer any tax imposed pursuant to [§ 40:48F-1]," is nothing more than an expression by the Legislature

that recognizes that central tax collection is a "reasonable and efficient method of administering such taxes, since . . . the State of New Jersey also imposes a hotel occupancy tax." (Opp'n Br. at 7.) It concedes that the "Legislature would have the power [to take away the right to collect any unpaid taxes themselves], but [argues that] under applicable rules of statutory construction, the Legislature must explicitly take away a municipality's right to sue to collect its own hotel occupancy taxes." (Id. at 10.) And, it argues that "[t]here is nothing in the Enabling Act which explicitly takes away a municipality's right to sue to collect its own hotel occupancy taxes or from which one could reasonably infer that the Legislature intended to leave municipalities at the mercy of third parties to collect their taxes." (Id.) Because this Court has already acknowledged that, in New Jersey, municipalities "have no powers save those delegated to them by the Legislature and the State Constitution," this Court disagrees with Lyndhurst that the question is whether the Legislature explicitly took away its right to sue; the question is whether it was granted such a right under the Enabling Act, or whether that power may be implied by the grant of power authorized.

Lyndhurst argues that several New Jersey statutory provisions authorize such enforcement power: §§ 40:48-1, 40:48-2.11, and 40:48F-3(b). Section 40:48-1 (Municipality General Powers: "Ordinances; general purpose") provides in part that "[t]he governing body of every municipality may make, amend, repeal and enforce ordinances to: Finances and property. 1. Manage, regulate and control the finances and property, real and personal, of the municipality; . . . ." Lyndhurst argues that the authorization to make and enforce ordinances regarding the finances of the municipality includes the authorization to enforce the hotel tax. However, taxation is the generation of revenues, not the management of revenues once remitted; this provision does not speak to the power to tax or enforce taxation. As the court held in Dome Realty, where the

Legislature has "adopted a series of statutes which spell out in comprehensive fashion the powers and rights of municipalities," those statutes "set forth the exclusive means available to a municipality to enforce tax liabilities." Thus, this general statement of the purposes of municipal ordinances by itself does not speak to the taxing authority expressly or impliedly granted under the Enabling Act.

Next, Lyndhurst states that "[t]he same statute [presumably § 40:48-1] gives a municipality the authority to enforce its ordinances: 'Nothing in this act shall be construed to abrogate or impair the powers of the courts or of any department of any municipality to *enforce* any provisions of its charter or *its ordinances* or regulations, nor to prevent or punish violations thereof; and the powers conferred by this act shall be in addition and supplemental to the powers conferred by any other law." (Opp'n Br. at 6-7 (quoting N.J. Stat. Ann. § 40:48-2.11 (emphasis provided by Lyndhurst)).) Like § 40:48-1, this provision is not part of the Enabling Act; it is a general provision that is part of § 40:48-2 ("Other necessary and proper ordinances"). Section 40:48-2 provides that

> Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.

These provisions deal with a municipality's police power, not the power of taxation. See Apartment House Council v. Ridgefield, 301 A.2d 484, 486-87 (N.J. Super. Ct. L. Div. 1973). Additionally, this statute, unlike the Enabling Act, expressly provides for enforcement.

Finally, Lyndhurst points to § 40:48F-3 of the Enabling Act. Section 40:48F-3

("Collection of tax") provides in its entirety:

> a. A tax imposed pursuant to a municipal ordinance adopted under the provisions of section 3 of P.L. 2003, c. 114 (C. 40:48F-1) shall be collected on behalf of the municipality by the person collecting the rent from the hotel customer.
> b. Each person required to collect a tax imposed by the ordinance shall be personally liable for the tax imposed, collected or required to be collected hereunder. Any such person shall have the same right in respect to collecting the tax from a customer as if the tax were a part of the rent and payable at the same time; provided, however, that the chief fiscal officer of the municipality shall be joined as a party in any action or proceeding brought to collect the tax.

Lyndhurst makes three arguments related to this section. First, it argues that "[p]lainly, the Legislature did not give the Director exclusive right to collect municipal hotel occupancy taxes." (Opp'n Br. at 9.) Next, it argues that, by expressly requiring a municipal officer to join in a suit for collection, the Legislature clearly intended municipalities to be involved in enforcement. Finally, it argues that, given this provision authorizing persons who are required to collect the tax to sue, an absurd result would occur if "everyone in the money pipeline *except* the ultimate recipient of the tax money, the municipalities, . . . [had] the right to sue to collect the tax." (Opp'n Br. at 10 (emphasis in original).)  This Court disagrees.

There are two different "collections" under the Enabling Act. There is collection of the tax from the customer, and then, there is collection by the Director of Taxation of all the hotel taxes. A person required to collect the hotel tax from customers must remit the tax owed to the Director of Taxation whether they receive it from the customer or not; as the statute makes clear, they are personally liable for such tax. The power to sue for a fixed amount owed but unpaid by a customer is not the same as saying that a party can sue to determine the amount required to be remitted to the Director of Taxation under the statute. This later situation, what Lyndhurst asserts it has the power to do, implicates not only the power of enforcement, but also the administration

of the tax and the determination of tax liability.  Pursuant to the Enabling Act the Director of Taxation "shall collect and administer any tax" and "shall have all the powers granted in P.L. 1966, c. 30 (C. 54:32B-1 et seq. [the Sales and Use Tax Act ])."  As noted above, these powers include the power to determine the amount of tax, § 54:32B-19, and the power to request that the Attorney General file suit to enforce payment of any delinquent tax, § 54:32B-22.  Aside from the language authorizing the Attorney General to file suit, Lyndhurst's interpretation, implying the power of a municipality to sue to enforce the amount due under the Enabling Act, would also negate the Director of Taxation's power to determine the amount of tax.  Lynhurst's argument is further undermined by the analogous provision for cities of the first class or cities of the second class with an international airport.  For these cities, the Legislature provided in § 40:48E-4 ("Collection; personal liability of collector; no separate charge or statement to customer of refund; prohibition; remission to chief fiscal officer; enforcement"), subsection (b), language mirroring that in § 40:48F-3(b) above, but it also expressly provided in subsection (e) that "[t]he city shall enforce the payment of delinquent hotel occupancy taxes in the same manner as provided for municipal real property taxes."  No such provision was provided in the Enabling Act for municipalities like Lyndhurst.

      Finally, this Court finds that a review of the various statutes related to hotel taxes and the additional sections cited by the parties makes it clear that the Legislature's grant of power to municipalities like Lyndhurst was not broad.  First class cities and second class cities with an international airport were authorized to "make, amend, repeal and enforce an ordinance imposing in the city a [hotel] tax," § 40:48E-3.  Under § 40:48-2, municipalities are authorized to "make, amend, repeal and enforce such other ordinances . . . as it may deem necessary and proper for the

good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants." The county board in Board of Taxation of Essex County was granted the authority to "investigat[e], revise, correct and equalize the assessed value of all property . . . and in general do everything necessary for the taxation of all property in the county at its taxable value." 223 A.2d at 360; § 54:4-47. In short, New Jersey statutes are replete with examples of the Legislature granting broad authority to municipalities. In contrast, under the Enabling Act at issue here, municipalities like Lyndhurst were simply authorized to "*adopt* an ordinance imposing a tax" according to the specific criteria provided for in the Act. This coupled with the express statutory directions that the Director of Taxation "shall collect and administer *any* tax imposed pursuant to [the Enabling Act]" and "shall have all the powers granted in [§ 54:32B-1, et seq.]" which include the power to determine the amount of tax due and the power to request that the Attorney General enforce the tax on its his behalf preclude a finding of an implied power of the municipalities to sue to collect the hotel tax, especially an amount of tax that has not been determined to be due by the Director of Taxation. Therefore, this Court finds that Lyndhurst lacks standing.

Because this Court finds that Lyndhurst is not the proper party to bring suit to enforce its ordinance created pursuant to the Enabling Act, it does not reach Defendants' other arguments. Additionally, Lyndhurst's other common law claims are derivative of its claim under the Enabling Act. Therefore, it also does not have standing to assert those claims.

## IV.     Conclusion

For the reasons discussed herein, this Court finds that Lyndhurst does not have standing to bring this action. Therefore, this Court grants Defendants' motion to dismiss the Complaint with

prejudice. An appropriate Order accompanies this Opinion.

DATED: March 17, 2009            /s/ Jose L. Linares
                                 JOSE L. LINARES
                                 UNITED STATES DISTRICT JUDGE